# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | | |
|---|---|---|
| SHARON C. BELL, | } | |
| | } | |
|     Plaintiff, | } | |
| | } | |
| v. | } | Case No.:  2:03-CV-0727-RDP |
| | } | |
| BIRMINGHAM BOARD OF | } | |
| EDUCATION, | } | |
| | } | |
|     Defendant. | } | |

## MEMORANDUM OPINION

## I.    INTRODUCTION

Plaintiff filed her Complaint against the Birmingham Board of Education ("BBOE") in this court on March 31, 2003.  (Doc. #1).  Plaintiff's Complaint contained the following claims against the BBOE:  race discrimination under 42 U.S.C. § 1981 (count one); retaliation under 42 U.S.C. § 1981 (count two); retaliation under 42 U.S.C. § 1983 (count three); violation of equal protection and/or substantive due process based on race under 42 U.S.C. § 1983 (count four); breach of contract (count five); and fraud (count six).  (Doc. #1).  On May 5, 2005, the Board filed its Answer.  (Doc. #4).[1]

Pending before the court is Defendant Birmingham Board of Education's ("BBOE") Motion for Summary Judgment and supporting materials (Docs. #26 - #27) filed on March 18, 2005.  Also before the court is BBOE's Initial Submission in Response to Exhibit B of the Court's Order in Support of Defendant's Motion to Deem Matters Admitted Pursuant to Federal Rule of Civil

---

[1]On July 16, 2004, Dr. Bell filed a motion to amend her Complaint (Doc. #10), which was opposed by the BBOE.  (Doc. #12).  By agreement of the parties, the court entered an order mooting Plaintiff's motion to amend.  (Doc. #15).

Procedure 36 (Doc. #28) filed on March 24, 2005.[2]  After obtaining an extension of time to respond,

on April 15, 2005, Plaintiff filed her opposition to summary judgment.  (Docs. #30 - #31).  BBOE

filed its reply brief (Doc. #36) on April 25, 2005.  For the reasons explained below, the court finds

that with respect to Plaintiff's federal claims, no material factual disputes exists and that the BBOE

is entitled to judgment as a matter of law.  In its discretion under 42 U.S.C. § 1367(c)(3), the court

declines to exercise jurisdiction over Plaintiff's state law claims and dismisses them without

prejudice.

## II.     STATEMENT OF FACTS[3]

Plaintiff is an African-American female resident of Jefferson County, Alabama.  (AF No. 1).[4]

Defendant BBOE, is a municipal entity which employs individuals working for the Birmingham City

Schools in Birmingham, Alabama.  (AF No. 2).  Plaintiff has been a BBOE employee since October

1973.  (AF No. 3).

---

[2]Because the court does not base its opinion on the evidence that is the subject of the BBOE's motion to deem matters admitted, the court will enter an order mooting it.

[3]The court has reviewed the evidence, and all factual inferences arising from it, in the light most favorable to the nonmoving party.

[4]The designation "AF" stands for admitted fact and indicates a fact offered by Defendant BBOE that Plaintiff has admitted in her written submissions on summary judgment, in her deposition testimony, or by virtue of any other evidence offered in support of her case.  Whenever Plaintiff has adequately disputed a fact offered by Defendant, the court has accepted Plaintiff's version.  The court's numbering of admitted facts (*e.g.*, AF No. 1) corresponds to the numbering of Defendant's Statement of Facts.  A number following a decimal point corresponds to the particular sentence within the numbered statement of facts.  For example, "(AF No. 38.2)" would indicate the second sentence of paragraph 38 of Defendant's Statement of Facts is the subject of the court's citation to the record.  The court also notes that Plaintiff has filed a total of 43 additional facts in support of her opposition to summary judgment, most of which are not material to the court's opinion.  (Doc. #30 at I.B. at 4-12).  To the extent the court finds any such additional facts to be material and undisputed, however, the court has referred to them in its opinion.

Plaintiff first made allegations of a racially hostile work environment in January 1995. (AF No. 4). Plaintiff alleges Dr. Wayman Shiver who, at the time, was Plaintiff's immediate supervisor, made derogatory remarks about women, required Plaintiff to perform demeaning tasks of a clerical nature, and made remarks of a sexual nature. (AF No. 5). Plaintiff alleges that she has been subjected to harassment by her supervisor "Dr. Wayman B. Shiver, and her prior supervisor, Superintendent Johnnie Brown, because of her race, black." (AF No. 6).

Plaintiff also alleges that in 1996, Dr. Shiver placed Ken Wasmund, a white male without tenure and with less educational experience and expertise than Plaintiff, in the Chamber of Commerce liaison position even though she was better qualified for the position. (AF No. 7). Plaintiff also contends that, during the time she worked under Dr. Shiver's supervision, she was subjected to constant harassment and was undermined by Dr. Shiver. For example, Plaintiff claims her annual training workshop trip was cancelled without her knowledge, Dr. Shiver refused to sign her invoices and purchase orders, and that he gave computers to other workers after Plaintiff had received donated computers for an elementary school project. (AF No. 8).

In 1997, Plaintiff was promoted to Assistant Superintendent of Student Services and oversaw Child Nutrition, Transportation, Child Health, Athletics, Attendance, Community Schools, and Guidance and Counseling Services. (AF No. 9). On March 27, 1997, Plaintiff was placed on administrative leave pending an investigation into several matters pertaining to her employment at the BBOE. (AF No. 10). Thereafter, on August 26, 1997, then Interim Superintendent of Schools, Dr. Geraldine Bell, recommended the cancellation of Plaintiff's employment contract. (AF No. 11). The BBOE voted to approve the recommendation pending Plaintiff's right to contest the decision and request a hearing. (AF No. 12). Specifically, the BBOE notified Plaintiff under Alabama Code § 16-24-9 of its proposal to cancel Plaintiff's employment contract on the grounds of incompetency,

neglect of duty, insubordination, and other good and just cause.  (AF No. 13).  Plaintiff was accused of the following misconduct:

      a.      Purchasing $15,000.00 of lunchroom equipment without obtaining prior approval, in violation of BBOE policies and procedures;

      b.      Purchasing computers, software, and equipment without obtaining prior approval of the Interim Executive Director for the Division of Integrated Technology Programs and Services as required by the BBOE's Policy Regarding the Legal and Ethical Use of Technology Resources and the Internet;

      c.      Sending a memorandum to certain employees which contradicted a prior memorandum sent by the Interim Superintendent to the same employees;

      d.      Sending a Child Nutrition Program report to the State Superintendent, Dr. Ed Richardson, knowing that the Interim Superintendent had already sent (or was in the process of sending) a report to Dr. Richardson, which resulted in Dr. Richardson criticizing the Birmingham Public School System for its lack of communication at the highest levels;

      e.      Purchasing food and items for a Christmas Party and baby shower and seeking reimbursement from the BBOE after being instructed by the Interim Superintendent not to purchase or order any items that were not in the budget because of the system's financial problems;

      f.      Failing to prepare the transfer list of the Child Nutrition Program workers as directed by the Interim Superintendent;

      g.      Disregarding a consent order entered by a Circuit Judge by drafting and distributing her own proposals to solve the Child Nutrition Program problems;

      h.      Using another employee's name, without proper authorization, to purchase several items from Sears Department Store and then seeking reimbursement from the BBOE;

i.     Removing financial records from the Adopt-A-School Program (AAS) immediately after being placed on administrative leave and failing to provide the BBOE with information concerning the records' whereabouts;

j.     Signing checks without a second signature in violation of an AAS resolution which required dual signatures on checks written on the Program's bank account;

k.     Writing eleven checks totaling approximately $25,888.00 in violation of AAS bylaw Section 5.7 which states that "no pecuniary obligation, expense, or disbursement of more than $500.00 shall be undertaken by the corporation without sanction by resolution duly adopted by the Board of Directors or the Executive Committee;"

l.     Refusing to provide the BBOE with information concerning the whereabouts of assets purchased for the AAS Program or with the Program's funds, not in the Program's inventory, including a VCR, television, camcorder, and laptop computer;

m.     Refusing to respond to the BBOE's inquiries regarding purchases made with AAS funds for which no documentation existed;

n.     Refusing to respond to BBOE's inquiries regarding seven checks made payable to Dr. Sharon Bell;

o.     Failing to produce documentation or cooperate with BBOE internal auditors;

p.     Failing to support case disbursements for the AAS Program which totaled $55,241.50;

q.     Failing to provide documentation to support that funds contributed to the AAS Program were disbursed in accordance with the Program's mission statement; and

5

r.      Requesting reimbursement from the BBOE for funds expended from the AAS Program account without proper authorization or documentation.  (AF No. 14).[5]

Plaintiff contested Dr. Geraldine Bell and the BBOE's recommendation to terminate her contract and a preliminary hearing was held on September 23, 1997.  (AF No. 15).  Dr. Geraldine Bell subsequently ended her term as Interim Superintendent of Schools and was replaced by Dr. Johnnie Brown.  (AF No. 16).  On February 12, 1998, Dr. Brown and Plaintiff entered into a "Joint Resolution of Matter Pertaining to Termination Hearing of Dr. Sharon Bell."  (AF No. 17).

Under the Joint Resolution, Plaintiff was reinstated as a Special Assignment Teacher/Facilitator on an interim basis.  (AF No. 18).  Under the Joint Resolution, Plaintiff agreed to reimburse the BBOE one month salary for a portion of the time that she had been on administrative leave in lieu of a one month suspension without pay and Plaintiff further agreed to an additional three day suspension without pay prior to returning to work.  (AF No. 19).  Under the Joint Resolution, Dr. Brown stated that he would revisit Plaintiff's employment within the following ten (10) months.  (AF No. 20).

Dr. Brown assigned Plaintiff to Kennedy Alternative School and she was to restructure its programs, revise the principal's handbook, meet with college and university presidents, conduct meetings, and redesign partnership programs with the school system.  (AF No. 21).  Plaintiff alleges that Linda Taylor, a white female with less experience and educational expertise, was assigned to take over the University Partnership Programs that Plaintiff designed and developed.  (AF No. 22).

On October 10, 2000, Plaintiff and the BBOE entered into a Memorandum of Understanding regarding Plaintiff's allegations of the above-referenced claims of discrimination and harassment.

---

[5]Plaintiff, while admitting that these accusations were made about her, disputes their veracity and further maintains that they were later proven to be unsubstantiated.

(AF No. 23). The points of agreement between the parties in the Memorandum of Understanding are as follows:

      a.      Dr. Brown would recommend to the BBOE that Plaintiff be employed as Area Senior Executive Director for Area V of the Birmingham City Schools;

      b.      Plaintiff's salary would be equal to and no less than that of the highest salary received by an Area Senior Executive Director employed with the Birmingham City Schools as of the date of the agreement;

      c.      In addition to her annual salary, Plaintiff would be paid, on a monthly basis, $150.00 as a communication allowance and $100.00 as a travel allowance; and $150.00 as a supplemental travel allowance;

      d.      Plaintiff's department would be reasonably staffed and budgeted for office and computer equipment, supplies, furniture, and staff consistent with the requirements of her position and the department's responsibilities;[6]

      e.      Plaintiff did not give up any tenure status earned or achieved nor did she waive any tenure rights to which she would entitled in her new position; and

      f.      Upon Board approval, Plaintiff would be paid the sum of $12,500.00 to be used by her to pay her attorneys for their services rendered. (AF No. 24).

The Memorandum of Understanding provides also that Plaintiff would have sole decision-making authority with respect to hiring staff. (AF No. 27). Exhibit A to the Memorandum of Understanding states that Plaintiff's term of employment is twelve months. (AF No. 28). The

---

[6]It was agreed staffing would include a secretary, a Director, two drop-out prevention coordinators, one interventions specialist, and adequate staffing for alternative programs, including personnel for the guidance and counseling programs and the extended day program. Plaintiff was to be given the same input into the staffing of positions within Area V as the Area Senior Executive Directors in Areas I-IV.

Memorandum of Understanding also states that it shall not be construed as a contract of employment (AF No. 29) and was conditioned upon BBOE's acceptance.  (AF No. 30).

Dr. Shiver was appointed Interim Chief Executive Officer of the Birmingham City School Board of Education in 2002.  (AF No. 32).  One of Dr. Shiver's first matters of business was to reorganize his staff.  (AF No. 33).  He modified existing staff positions into a new organizational structure.  (AF No. 35).  As part of this school-wide reorganization effort, Dr. Shiver proposed that all Senior Executive Area Directors be changed to Acting Senior Executive Directors.  (AF No. 36). Accordingly, Plaintiff's title was changed from Senior Executive Director of Area V to Acting Senior Executive Director of Alternative Schools.  (AF No. 37).[7]

During Dr. Shiver's tenure as Interim Chief Executive Officer, new procedures relating to reimbursement for mileage were put into place; Plaintiff was aware of these new procedures, but did not comply with them.  (Doc. #27 at Ex. 8 at 36 ("Q.  And you stated you don't complete those; is that correct?  A.  don't complete them.  No.  Q.  Why not?  A.  As I said before, I didn't get into this position for things such as, you know, just filling out mileage checks for like a dollar or two a day. It's not important to me.")).  However, Plaintiff still claims mileage reimbursement as part of her lawsuit because it was an express component of her overall compensation as set forth in the Memorandum of Understanding.  (Doc. #27 at Ex. 8 at 36-37).

On March 11, 2002, Plaintiff filed an EEOC Notice of Charge of Discrimination claiming employment discrimination on the basis of color, religion, age and retaliation.  (AF No. 38.1). Plaintiff's EEOC charge alleges, in part, that she is "constantly being subjected to harassment" and is being discriminated against by Defendant "because of my color in that employees of a darker skin

---

[7]The court notes that Plaintiff states in her opposition that she currently holds the position of Senior Executive Area Director For  Dropout Prevention and Support Services, and that she has held that position since 1999.  (Doc. #30 at 5 ¶ 2).

tone are being treated more favorably than [her]," but Plaintiff did not identify those purported comparators in her charge.  (AF No. 38.2); (Doc. #27 at Ex. 2 at 2 at I, III).

On September 26, 2002, Plaintiff received an EEOC Dismissal and Notice of Rights to Sue based on her March 11, 2002 charge.[8]  (AF No. 39.1).  The statutory period by which Plaintiff could institute suit with respect to the above-referenced charge expired on or about December 25, 2002.  (AF No. 39.2).  On March 31, 2003, Plaintiff instituted this lawsuit, alleging racial discrimination on account of her race, black, retaliation, breach of contract, and fraud.  (AF No. 40).

## III.   STANDARD OF REVIEW

Summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R .Civ. P. 56(c).  All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant.  *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).  A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

A plaintiff in an employment discrimination case maintains the ultimate burden of proving that the adverse employment decision was made because of intentional discrimination.  *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133 (2000); *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 509-12 (1993); *Nix v. WLCY Radio/Rahall Communications*, 738 F.2d 1181, 1184 (11th Cir.

_____

[8]Based upon its investigation, the EEOC made the following determination:

[T]he EEOC is unable to conclude that the information obtained establishes violations of the statutes.  This does not certify that the respondent is in compliance with the statutes.  No finding is made as to any other issues that might be construed as having been raised by this charge.

(Doc. #27 at Ex. 3).

1984). Although the Supreme Court previously established the basic allocation of burdens and order of proof in a disparate treatment case, *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248 (1981), as modified by *Desert Palace v. Costa*, 539 U.S. 90 (2003), that allocation scheme applies only in cases in which no direct evidence of discrimination exists. *Grigsby v. Reynolds Metals Co.*, 821 F.2d 590, 595 (11th Cir. 1987).

Under the *McDonnell Douglas/Burdine* scheme, a plaintiff first has the burden of proving by a preponderance of evidence a *prima facie* case of discrimination. Second, once the plaintiff proves a *prima facie* case, the burden of production shifts to the defendant to articulate a legitimate, non-discriminatory reason for its employment decision. Finally, if the defendant carries its burden, the plaintiff must either prove by a preponderance of the evidence that the legitimate reasons offered by the defendant are merely a pretext for discrimination or present sufficient evidence, of any type, for a reasonable jury to conclude that discrimination was a "motivating factor" for the employment action, even though defendant's legitimate reason may also be true or have played some role in the decision. *McDonnell Douglas Corp.*, 411 U.S. at 802-05; *Burdine*, 450 U.S. at 252-54; *Desert Palace*, 539 U.S. at 101-02.

## IV.   ANALYSIS

### A.   Plaintiff's Race-Based Claims[9]

Regardless of the legal vehicle relied upon – § 1981, § 1983, or Title VII – the court analyzes Plaintiff's race-based claims under the same framework. *See Furnco Constr. Corp. v. Waters*, 438 U.S. 567, 579-80 (1978)). It is axiomatic that a plaintiff in a disparate treatment case such as this

---

[9]For the purpose of summary judgment analysis, Plaintiff agrees that her causes of action alleged under § 1981 must be asserted under § 1983 and that her § 1981 claims are merged into her § 1983 claims as a matter of law. (Doc. #30 at III.A. at 14); *see Butts v. County of Volusia*, 222 F.3d 891, 892 (11th Cir. 2000) ("We conclude the amendments did not change § 1981 and § 1983 contains the sole cause of action against state actors for violations of § 1981.").

one must prove "intentional discrimination" in order to prevail.[10]  *Burdine*, 450 U.S. at 256; *see also*

*Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 153 (2000) ("The 'ultimate question' in

every disparate treatment case 'is whether the plaintiff was the victim of intentional

discrimination.'").  The Supreme Court has stated unequivocally that "[p]roof of discriminatory

motive is critical in a Title VII disparate treatment case." *Teamsters v. United States*, 431 U.S. 324,

335-36 n.15 (1977); *see also United States Postal Serv. v. Aikens*, 460 U.S. 711, 715 (1983); *Clark*

*v. Huntsville City Bd. of Educ.*, 717 F.2d 525, 528-29 (11th Cir. 1983) ("discriminatory motive,

purpose or animus").  The Court has also held that "discriminatory intent" in a Title VII case "means

actual motive; it is not a legal presumption to be drawn from a factual showing of something less than

actual motive." *Pullman-Standard v. Swint*, 456 U.S. 273, 289-90 (1982).[11]  As explained in more

detail below, BBOE's Motion for Summary Judgment is due to be granted on Plaintiff's race

discrimination claims because Plaintiff has failed to produce substantial evidence of any intentional

discrimination.

---

[10]Plaintiff does not maintain that she has come forward with direct evidence of race discrimination or retaliation.

[11]Of course, these standards apply with equal force to Plaintiff's discrimination claims under the Equal Protection Clause, prosecuted under 42 U.S.C. § 1983.  *See Jean v. Nelson*, 711 F.2d 1455, 1486 n.30 (11th Cir. 1983) ("Although the standard of proof in Title VII cases differs from that in constitutional equal protection cases, the framework for proving a case, *i.e. prima facie* case, rebuttal, ultimate proof, is the same.") (citing *Castaneda v. Partida*, 430 U.S. 482, 495-96) ("establishing *prima facie* case requiring rebuttal in jury discrimination case").

1.    **Plaintiff cannot establish a *prima facie* case of race discrimination.**

The  race discrimination allegations contained in Plaintiff's Complaint assert that she was subjected to both general discriminatory treatment[12] and discriminatory demotion and/or failure to promote.[13]  Plaintiff's brief, however, focuses more specifically upon the BBOE's alleged disparate treatment of her in the areas of: (1) mileage reimbursement; (2) reduction of her office staff; (3) references to her as an "administrative assistant" with her official job title change from Executive Director of Area V to Acting Senior Executive Director of Alternative Schools as part of the overall reorganization of the BBOE; and (4) her being required to make several involuntary moves to and from various BBOE schools.[14]  (Doc. #30 at III.D.2. at 19-20).  However, Plaintiff's claims fail for

---

[12]A plaintiff can establish a *prima facie* case of discrimination by showing that:  1)  she is a member of a protected class; 2) she was subjected to an adverse employment action; 3) while similarly situated persons outside of her protected class received more favorable treatment; and 4) she was qualified for the position.  *Holifield v. Reno*, 115 F.3d 1555, 1561 (11th Cir. 1997).

[13]A plaintiff can establish a *prima facie* case of discriminatory failure to promote by showing that: "1) [s]he is a member of a protected group; 2) [s]he was qualified for and applied for a particular position; 3) [s]he was rejected despite those qualifications; and 4) another equally or less qualified employee who was not a member of the protected group was promoted to the position for which Plaintiff applied."  *Wu v. Thomas*, 847  F.2d 1480, 1483 (11th Cir. 1988).  Alternatively, in those workplaces in which "an employer has an informal promotion procedure, such as where job openings are not posted or the employer does not require employees to submit applications in order to be considered for a promotion, an employee may establish th[e] element [that she actually applied for the position in question] of the *prima facie* case simply by showing that the position was available and the employer had some reason or duty to consider h[er] for the post."  *Miller v. Bed, Bath & Beyond, Inc.*, 185 F. Supp. 2d 1253, 1267 (N.D. Ala. 2002); *see also Jones v. Firestone Tire and Rubber Co., Inc.*, 977 F.2d 527, 533 (11th Cir. 1992); *Carmichael v. Birmingham Saw Works*, 738 F.2d 1126, 1133-34 (11th Cir. 1984).  As Plaintiff has not adduced adequate proof of the application element under either one of these tests, her promotion claim (to the extent she is even still pursuing such a claim) fails for this same reason as well.

[14]The court notes that to the extent Plaintiff has failed to brief the court on her other allegations of discrimination contained in her Complaint, it is appropriate for the court to treat those particular claims as abandoned.  *See, e.g.*, *Wilkerson v. Grinnell Corp.*, 270 F.3d 1314, 1322 (11th Cir. 2001) (finding claim abandoned when argument not presented in initial response to motion for summary judgment); *Bute v. Schuller International, Inc.,* 998 F. Supp. 1473, 1477 (N.D. Ga. 1998)

two reasons.  First, she  has failed to produce sufficient evidence that the decision-makers involved

with these claims treated similarly situated employees outside her protected classification (*i.e.*, darker-

skinned African-American individuals) more favorably than Plaintiff, and that failure is fatal to her

claims.  *Jones v. Gerwins*, 874 F.2d 1534, 1542 (11th Cir. 1989); *Smith v. Monsanto Chemical Co.*,

770 F.2d 719, 724 (8th Cir. 1985), *cert. denied*, 475 U.S. 1050 (1986); *Tate v. Wayerhouser Co.*, 723

F.2d 598, 605 (8th Cir. 1983), *cert. denied*, 469 U.S. 847 (1984).  Second, the court concludes for the

reasons explained below that most of these so-called discriminatory acts do not rise to the level of an

adverse employment action.

### a.   Plaintiff has not identified any suitable comparators.

In her brief in opposition to summary judgment, Plaintiff identifies the following other Senior

Area Directors, who are darker-skinned than she, as possible comparators:  Dr. Barber, Ms. Williams,

Dr. Pijeaux, and Ms. Childers.  With respect to these persons, Plaintiff vaguely states:

> None of them were demoted by Dr. Shiver, and some were actually promoted by him.
> None were otherwise adversely treated under his stewardship of the Board in any
> relevant way.  Dr. Barber, Ms. Williams, and Dr. Pijeaux are all still receiving their
> mileage checks.  Therefore, [Plaintiff] has fulfilled this element of her *prima facie*
> case.

(Doc. #30 at III.D.3. at 20).

---

(finding unaddressed claim abandoned); *see also Coalition for the Abolition of Marijuana Prohibition v. City of Atlanta*, 219 F.3d 1301, 1326 (11th Cir. 2000) (failure to brief and argue issue at the district court is sufficient to find the issue has been abandoned); *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995); *Hudson v. Norfolk Southern Ry. Co.*, 209 F. Supp. 2d 1301, 1324 (N.D. Ga. 2001). *Cf. McMaster v. United States*, 177 F.3d 936, 940-41 (11th Cir. 1999) (claim may be considered abandoned when district court is presented with no argument concerning a claim included in the plaintiff's complaint); *Road Sprinkler Fitters Local Union No. 669 v. Independent Sprinkler Corp.*, 10 F.3d 1563, 1568 (11th Cir. 1994) (concluding that a district court "could properly treat as abandoned a claim alleged in the complaint but not even raised as a ground for summary judgment").

The Eleventh Circuit reiterated the standard for determining whether employees are similarly situated in *Silvera v. Orange County School Bd.*, 244 F.3d 1253, 1259 (11th Cir. 2001):[15]

> In determining whether employees are similarly situated for purposes of establishing a *prima facie* case, it is necessary to consider whether the employees are "involved in or accused of the same or similar conduct and are disciplined in different ways." *Jones v. Bessemer Carraway Med. Ctr.*, 137 F.3d 1306, 1311 (11th Cir.) (quoting *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir.1997)), *opinion modified by,* 151 F.3d 1321 (11th Cir.1998). "The most important factors in the disciplinary context . . . are the nature of the offenses committed and the nature of the punishments imposed." *Id.* (citations and quotations omitted). In order to satisfy the similar offenses prong, the comparator's misconduct must be nearly identical to the plaintiff's in order "to prevent courts from second-guessing employers' reasonable decisions and confusing apples with oranges." *See Maniccia v. Brown*, 171 F.3d 1364, 1368-69 (11th Cir.1999) (citations omitted).

244 F.3d at 1259.  In other words, to meet the comparability requirement, Plaintiff must show that she is "similarly situated in *all relevant aspects* to the non-[protected category] employee." *Silvera*, 244 F.3d at 1259 (citing *Holifield*, 115 F.3d at 1562) (emphasis added).  She must demonstrate that the reported misconduct and/or work history of the comparator was "nearly identical" to hers.  *Nix*, 738 F.2d at 1185.  Plaintiff, however, has utterly failed to make this showing.  She has not addressed the work records of her purported comparators, much less explained to the court why she and any of them are similarly situated in all relevant aspects.[16]  In addition, with respect to her job title change,

---

[15]The court recognizes that this is not a discriminatory disciplinary case.  However, these cases still provide useful insight into the nature of the similarly situated standard.

[16]In her additional statement of facts, Plaintiff refers to her deposition testimony and states that "[w]hen Dr. Shiver became Superintendent, all the senior executive directors were promoted or remained in their position except Dr. Bell, even though none of those persons had tenure at the time." (Doc. 30 at 53-54 ¶28).  The court notes that Plaintiff's testimony on this subject far from substantiates this additional fact.  For example, Plaintiff recalls that both Mr. Coats and Ms. Childers had obtained tenure.  (*Id.* at 54).  Moreover, her testimony regarding this point is broken and jumbled:  "and I think Claudia Williams came on board. . . .  And Dr. Pijeaux was not - - she was under Dr. Coats[,]" sprinkled with "maybes," and lacks any documentary corroboration as to her recollection of the employment status and reorganizational decisions affecting the other four Senior Executive Area Directors.  Regardless, Plaintiff's superficial references to these other persons, who were "[d]arker than [Plaintiff]" fall far short of meeting the "similarly situated" requirement.  (*Id.*

Plaintiff cannot substantiate that she was singled out on the basis of her skin color as all Senior

Executive Area Directors encountered job title changes as a result of Dr. Shiver's structural

reorganization of the BBOE.  Similarly, with respect to mileage reimbursements, Plaintiff has not

shown that Dr. Barber, Ms. Williams, and Dr. Pijeaux received theirs without turning in the necessary

paperwork.

> **b.    Most of Plaintiff's complaints do not constitute adverse employment actions.**

To be considered an adverse employment action, "the action must either be an ultimate

employment decision or else must 'meet some threshold level of substantiality.'" *Stavropoulos v.*

*Firestone*, 361 F.3d 610, 616-17 (11th Cir. 2004) (citing *Bass* v. *Board of County Com'rs, Orange*

*County, Fla.*, 256 F.3d 1095, 1118 (11th Cir. 2001)).  In *Wideman v. Wal-Mart,* 141 F.3d 1453, 1456

(11th Cir. 1998), the Eleventh Circuit coined the term "threshold level of substantiality" and held that

Title VII's protection against retaliatory discrimination extends to certain adverse actions that fall

short of an ultimate employment decision:[17]

> Although we do not doubt that there is some **threshold level of substantiality** that must be met for unlawful discrimination to be cognizable under the anti-retaliation clause, we need not determine in this case the exact notch into which the bar should be placed. It is enough to conclude, as we do, that the actions about which Wideman complains considered collectively are sufficient to constitute prohibited discrimination. We need not and do not decide whether anything less than the totality of the alleged reprisals would be sufficient.

*Id.* (emphasis added).  Not everything, however, that makes an employee unhappy constitutes an

adverse employment action.  For conduct to be considered adverse, it must materially alter the

employee's compensation terms, conditions, or privileges of employment.  *Bass,* 256 F.3d at 1118.

---

at 54-55).

[17]This test for establishing an adverse employment action applies equally to claims of race discrimination.

A materially adverse change in the terms and conditions of employment must be more disruptive than a mere inconvenience or an alteration of job responsibilities. *Hartsfield v. Miami-Dade County*, 90 F. Supp. 2d 1363, 1374 (S.D. Fla. 2000) (quoting *Crady v. Liberty National Bank*, 993 F.2d 132, 136 (7th Cir. 1993)), *aff'd*, 248 F.3d 1179 (11th Cir. 2001)).

Moreover, the employee's subjective view of the significance and adversity of the employer's action is not controlling; whether the employment action is materially adverse is determined, at least in part, by applying the reasonable person in the circumstances standard. *Davis v. Town of Lake Park, Fla.*, 245 F.3d 1232, 1239 (11th Cir. 2001). Indeed, the determination of whether something constitutes an adverse employment action must be made on a case-by-case basis and, like the hostile work environment analysis, contains both an objective and a subjective component. *Hansen v. Perry Technologies*, 206 F. Supp. 2d 1223 (S.D. Fla. 2002) (citing *Doe v. Dekalb County Sch. Dist.*, 145 F.3d 1441, 1448-49 (11th Cir.1998)). Complaints about job reassignments and/or resource reallocations, like those raised by Plaintiff, are subject to a particularly careful review as to the adversity requirement:

> Work assignment claims strike at the very heart of an employer's business judgment and expertise because they challenge an employer's ability to allocate its assets in response to shifting and competing market priorities. The same concern exists for public entities such as the Town's Police Department, which must balance limited personnel resources with the wide variety of critically important and challenging tasks expected of them by the public. For these reasons, applying the adverse action requirement carefully is especially important when the plaintiff's claim is predicated on his disagreement with his employer's reassignment of job tasks.

*Davis*, 245 F.3d at 1244.

Here, the only allegations supported by evidence of any actions that had a negative economic impact on Plaintiff are her assertions related to mileage reimbursement. For example, notwithstanding her claim that she suffered some loss of prestige in these changes, Plaintiff has not

established that when her job changed in title and/or when she was relocated to other schools she suffered a decrease in pay. *See Davis*, 245 F.3d at 1239, 1244-45 (noting that in the vast majority of cases, loss of prestige is insufficient to state a Title VII claim and cautioning that when a reassignment involves no "serious and material change in the terms, conditions, or privileges of employment," a court should not act as a "super-personnel department" by questioning an employer's business judgment about where it assigns employees). All the other non-economic allegations made by Plaintiff, even considered collectively, are more properly characterized as disagreements over how to restructure the BBOE, as they do not involve matters that materially alter Plaintiff's conditions or privileges of employment. Therefore, with the possible exception of mileage reimbursement,[18] Plaintiff has not established any adverse action that satisfies the test of substantiality based upon a totality of the circumstances.

### 2. Plaintiff lacks sufficient evidence of pretext.

However, Plaintiff's race discrimination claims also fail due to her inability to show pretext. In addressing the issue of pretext, the Supreme Court has stated:

> Thus, a plaintiff's *prima facie* case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated. This is not to say that such a showing by the plaintiff will *always* be adequate to sustain a jury's finding of liability. Certainly there will be instances where, although the plaintiff has established a *prima facie* case and set forth sufficient evidence to reject the defendant's explanation, no rational factfinder could conclude that the action was discriminatory. For instance, an employer would be entitled to judgment as a matter of law if the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred.

---

[18]The court notes that it has serious doubts about whether Plaintiff has subjectively satisfied the threshold level of cognizableness necessary to establish an adverse employment with respect to mileage reimbursement given her testimony that "it's not important to me." (Doc. #27 at Ex. 8 at 36).

*Reeves*, 530 U.S. at 148 (emphasis in original).  Therefore, despite a plaintiff's efforts to demonstrate an issue of fact regarding the truthfulness of an employer's asserted justification for an adverse employment decision, judgment as a matter of law in favor of the employer would still be appropriate if the record:  1) conclusively demonstrates some other, nondiscriminatory basis for the decision; or 2) reveals only a weak issue of fact coupled with plentiful evidence that no illegal discrimination took place.  Furthermore, the crucial examination at the pretext level is whether the employer has honestly explained its actions, not whether the court would make the same decisions.

Plaintiff has not pointed to any evidence from which a reasonable jury could conclude that the BBOE's explanations for its treatment of her were a pretext for (or a lie to conceal) its true motivation—illegal discrimination based upon the shade of her skin color.  For example, the BBOE has stated that its reason for not reimbursing Plaintiff for mileage was due to her failure to turn in the necessary paperwork that it, subsequent to the parties' finalization of the Memorandum of Understanding, required of all employees for such requests.  Plaintiff freely admits that she never complied with the mileage reimbursement procedure.  Additionally, the BBOE has stated that the changes in Plaintiff's title, staff, and school locations were all part of the overall reorganization plan for the BBOE, which Plaintiff acknowledges was Dr. Shiver's first matter of business.[19]  Furthermore,

---

[19]One may debate whether these changes implemented by the BBOE were wise employment decisions.  But the Eleventh Circuit has made it clear that "[f]ederal courts do not sit as a super-personnel department that reexamines an entity's business decisions.  No matter how medieval a firm's practices, no matter how high-handed its decisional process, no matter how mistaken the firm's managers, the ADEA [, Title VII, or § 1981] does not interfere.  Rather, our inquiry is limited to whether the employer gave an honest explanation of its behavior." *Chapman v. AI Transport*, 229 F.3d 1012, 1030 (11th Cir. 2000) (en banc) (quoting *Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1470 (11th Cir. 1991) (internal quotations omitted); *see also Nix v. WLCY Radio/Rahall Communications*, 738 F.2d 1181, 1187 (11th Cir. 1984) (An "employer may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason."); *Abel v. Dubberly*, 210 F.3d 1334, 1339 n.5 (11th Cir. 2000); *Mechnig v. Sears, Roebuck & Co.*, 864 F.2d 1359, 1365 (7th Cir.1988) (citations omitted).  Plainly stated, courts "do not . . . second-guess the business judgment of employers." *Combs v.*

Plaintiff has not offered any evidence of racially derogatory comments or jokes by Dr. Shiver from which a reasonable trier of fact could conclude that he held a racial bias against lighter-skinned African-American employees.[20]  Therefore, Plaintiff's race discrimination claims are lacking on both *prima facie* and pretext grounds; accordingly, they are due to be dismissed as a matter of law.

### B.        Plaintiff's Retaliation-Based Claims

To successfully establish a retaliation claim under Title VII and/or § 1981, Plaintiff must show that (1) she engaged in protected activity; (2) she suffered an adverse employment action; and (3) there is causal connection between the protected activity and the adverse employment action. *Stavropoulos*, 361 F.3d at 616 (citing *Bass*, 256 F.3d at 1117); *see also Gregory v. Georgia Dept. of Human Resources*, 355 F.3d 1277, 1279 (11th Cir. 2004); *Brochu v. City of Riviera Beach*, 304 F.3d 1144, 1155 (11th Cir. 2002).[21]

---

*Plantation Patterns*, 106 F.3d 1519, 1543 (11th Cir. 1997); *accord Alexander v. Futon County, Ga.*, 207 F.3d 1303, 1339,1341 (11th Cir. 2000); *Damon v. Fleming Supermarkets of Florida, Inc.*, 196 F.3d 1354, 1361 (11th Cir. 1999) ("We have repeatedly and emphatically held that a defendant may terminate an employee for a good or bad reason without violating federal law.  We are not in the business of adjudging whether employment decisions are prudent or fair.") (internal citation omitted).

[20]The court notes that Plaintiff has asserted that Dr. Shiver made gender-related comments. However, proceeding on the assumption that these statements would be admissible, this evidence, without more, is insufficient to show skin shade bias on the part of Dr. Shiver, much less establish pretext in the decisions about which Plaintiff complains.

[21]To establish a § 1981 *prima facie* case of retaliation, Plaintiff must prove all of the following: (1) that she participated in an activity protected by § 1981; (2) that she suffered an adverse employment action; and (3) that there is a causal connection between elements (1) and (2).  *Hansen v. Perry Technologies*, 206 F. Supp. 2d 1223 (S.D. Fla. 2002) (citing *Gupta v. Florida Bd. of Regents*, 212 F.3d 571, 587 (11th Cir. 2000) and *Farley v. Nationwide Mut. Ins. Co.*, 197 F.3d 1322, 1336 (11th Cir. 1999)).  Retaliation claims under § 1983 and Title VII generally have the same elements of proof and use the same analytical framework.  *Pennington v. City of Huntsville,* 261 F. 3d 1262 (11th Cir. 2001) (noting similarity between § 1983 and Title VII retaliation claims). However, as discussed *infra*, there are additional elements that Plaintiff must establish to hold a municipality liable for some alleged unlawful act of a supervisor.  Specifically, Plaintiff must establish that the alleged unlawful conduct constituted an official policy or custom.  Additionally,

As stated in her brief, Plaintiff premises her retaliation claims upon the same acts that she maintains were racially discriminatory. (Doc. #30 at III.E.1. at 23). The protected activities upon which Plaintiff relies include the filing of a prior lawsuit based on discrimination, the filing of another, subsequent EEOC charge of discrimination in March 2002, and the initiation of the present lawsuit. (*Id.* at III.3.E. at 22). However, for the same reasons that Plaintiff has no viable race discrimination claim, her retaliation claims also must fail.

For example, Plaintiff maintains that she received a demotion upon the reorganization by Dr. Shiver of the BBOE staff. While she did receive a change in her title, there is no evidence that this corresponded into a reduction in her compensation. In fact, the evidence contained in the record demonstrates that every director received a change in position title as a result of Dr. Shiver's new organizational structure for the BBOE. Moreover, there is no evidence in the record of Dr. Shiver's doing or saying anything that would lead a jury to believe that he retaliated against Plaintiff. Under these circumstances, Plaintiff cannot show that she suffered an adverse employment action, much less that the Board's proffered explanation behind the changes that affected her job title, duties, staff, and

---

the § 1981 retaliation claim may, in some circumstances, be different than a Title VII retaliation claim. *See Little v. United Technologies*, 103 F.3d 956 (11th Cir.1997); *Olmsted v. Taco Bell*, 141 F.3d 1457, 1463 n.4 (11th Cir. 1998).

In *Little*, a white plaintiff complained about racially offensive remarks directed at a black co-worker. *Little*, 103 F.3d at 960. He alleged that he was retaliated against in violation of Title VII and § 1981 for making such complaint. 103 F.3d at 958. Since the plaintiff did not allege, much less offer any evidence, that the retaliation was related to his race, the court held that he had not satisfied his *prima facie* burden regarding § 1981. *Id.* at 961. In fact, the court suggested that an opposition claim is not sufficient to make out a § 1981 retaliation claim. *Id.* ("Both the facts and legal framework of Little's action are grounded solely in the opposition clause of Title VII and are unrelated to the concerns explicitly set forth in the language of § 1981."). In any event, an adverse employment action is a necessary condition for all three claims and as previously demonstrated there are none here. *See Miller*, 185 F. Supp. 2d at 1274 (foreclosing a § 1981 retaliation claim because when plaintiff is unable to show adverse employment action with respect to Title VII retaliation claim).

20

school location, *i.e.*, the structural reorganization of the BBOE, is unworthy of credence or a pretext for retaliation. Therefore, Plaintiff's retaliation claims are not viable due to a lack of proof at the *prima facie* and pretext levels.[22]

**C.      Plaintiff's Federal Claims Pursuant to 42 U.S.C. § 1983**

Plaintiffs' federal claims under § 1983 are governed by the principles established by the Supreme Court in *Monell v. Department of Social Services*, 436 U.S. 658 (1978). In that case, the Supreme Court placed strict limitations on municipal liability. In order a city to be subjected to § 1983 liability, a plaintiff must do something more than establish *respondeat superior* liability. Indeed, to hold a city entity liable, it must be proven, at a minimum: (1) that the individual defendant's actions were unconstitutional; and (2) that a municipal "policy" or "custom" of the entity caused these violations to occur. *See, e.g., Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998) ("[A] municipality may be held liable [under section 1983] for the actions of a [public official] only when municipal 'official policy' causes a constitutional violation.").

A municipal employee, like Plaintiff, has two methods by which to establish a city policy: she may identify either (1) an officially promulgated municipal policy; or (2) an unofficial custom or practice of the municipality which can be shown through the repeated acts of a final policymaker for the city. *Monell*, 436 U.S. at 690-91, 694; *Brown v. Neumann*, 188 F.3d 1289, 1290 (11th Cir. 1999) (citing *City of St. Louis v. Praprotnik*, 485 U.S. 112, 121 (1988)). Because a municipal entity rarely will have an officially-adopted policy of permitting a particular constitutional violation, most plaintiffs must show that the municipality has a custom or practice of permitting it and that the city's custom or practice is "the 'moving force [behind] the constitutional violation.'" *City of Canton v.*

---

[22]The court reaches this same conclusion with respect to all the other acts upon which Plaintiff relies to support her retaliation claim.

*Harris*, 489 U.S. 378, 389 (1989) (alteration in original) (citing *Monell*, 436 U.S. at 694 and *Polk County v. Dodson*, 454 U.S. 312, 326 (1981)).  A custom or practice, while not adopted as an official formal policy, may be so pervasive as to be the functional equivalent of a formal policy.  *Monell*, 436 U.S. at 690-91; *Church v. City of Huntsville*, 30 F.3d 1332, 1343 (11th Cir. 1994).  A single incident is not so pervasive as to be a custom or practice.  *City of Oklahoma v. Tuttle*, 471 U.S. 808, 823-24 (1985) (plurality) (stating that when establishing liability for a custom or practice, "[p]roof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*").

Under this analysis, the BBOE is due summary judgment on Plaintiff's § 1983 claims for two reasons.  First, as the court has concluded that no underlying violations of Plaintiff's constitutional rights took place (i.e. no racial discrimination and no retaliation as a matter of law), there can be no municipal entity liability on the part of the BBOE.  *See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (recognizing that if person suffers no constitutional injury, then no liability may exist against government body); *Rooney v. Watson*, 101 F.3d 1378, 1381 (11th Cir. 1996), *cert. denied.*, 522 U.S. 966 (1997) (recognizing that "an inquiry into a governmental entity's custom or policy is relevant only when a constitutional deprivation has occurred"), *cert. denied.*, 522 U.S. 966 (1997); *Hardin v. Hayes*, 52 F.3d 934, 939 n.8 (11th Cir. 1995) (holding that when underlying act at issue is not constitutional violation, there is no need to consider whether municipal policy is deficient).

Second, even if Dr. Shiver had violated Plaintiff's constitutional rights,[23] the BBOE would still be entitled to summary judgment because there is no record evidence of a municipal policy or custom that caused the purported constitutional violations to occur.  Quite obviously, there is no evidence of any officially-adopted city policy of permitting discrimination or retaliation.  Nor is there

---

[23]While in her brief in opposition to summary judgment, Plaintiff limits her discussion to the actions of Dr. Shiver, the following analysis applies equally to the allegations Plaintiff made about Superintendent Johnnie Brown in her Complaint.

any evidence that Dr. Shiver was a decisionmaker vested with final authority to create policy. *See McMillan v. Monroe County*, 520 U.S. 781, 784 (1997).

It is well settled that a municipal official is not a final policymaker if his decisions are subject to meaningful review. *See Morro v. City of Birmingham*, 117 F.3d 508, 510 (11th Cir. 1997) (police chief not a final policymaker because his decision was subject to review); *Scala v. City of Winter Park*, 116 F.3d 1396, 1401 (11th Cir. 1997) (city manager not a final policymaker because his decision was subject to "meaningful administrative review"); *Hill v. Clifton*, 74 F.3d 1150, 1152 (11th Cir. 1996) (city police chief was not a final policymaker because his employment decisions could be reversed by the city manager); *Martinez v. City of Opa-Locka*, 971 F.2d 708, 713-15 (11th Cir. 1992). Here, any "decision" – or more aptly, any recommendation – by Dr. Shiver, as the Superintendent for the Birmingham City School System, regarding policies was subject to "approval and adoption by the city board of education" *i.e.*, in this instance, the BBOE. Ala. Code § 16-12-5 (1975).

Moreover, in the area of municipal employment, the Supreme Court of Alabama has recognized the interdependent roles that the city superintendent and the city board of education share. *See Vondantis v. Birmingham Bd. of Educ.*, 373 So.2d 320, 321 (1979) ("The superintendent has no power to dismiss; he may only recommend dismissal to the board of education. Similarly, the board, acting alone, may not dismiss, but may do so only upon recommendation of the superintendent.") (citations omitted); *see also Marsh v. Birmingham Bd. of Educ.* 349 So.2d 34, 35 (1977) ("The superintendent of education is not the employing body; the board of education is."). Under these legal principles, neither Dr. Shiver, nor any other city superintendent, is a final decisionmaker within the meaning of the *Monell* decision. Furthermore, as Plaintiff is unable to satisfy either one of the *Monell* municipal liability requirements, all of her claims premised upon § 1983 are subject to dismissal as a matter of law.

**D.      Plaintiff's State Law Claims**

Having concluded that the BBOE is entitled to summary judgment on all federal claims, pursuant to 28 U.S.C. § 1367(c)(3), the court, in its discretion, declines to exercise jurisdiction over the remaining state law counts for breach of contract and fraud, and will enter an order dismissing them without prejudice.

**V.      CONCLUSION**[24]

Defendant BBOE has carried its burden on summary judgment of demonstrating that there are no material facts in dispute and that it is entitled to judgment as a matter of law on Plaintiff's federal claims.  The court declines, in its discretion pursuant to 28 U.S.C. § 1367(c)(3), to exercise jurisdiction over Plaintiff's state law causes of action, and will enter an order dismissing them without prejudice.

**DONE** and **ORDERED** this _____4th_____ day of October, 2005.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE

---

[24]For the reasons outlined above, the court finds that summary judgment in favor of the BBOE is appropriate.  Accordingly, it does not reach the merits of the parties' dispute over which statute of limitation applies to Plaintiff's § 1981 claims, *i.e.*, two years versus four years, or the application *vel non* of the continuing violation doctrine to the case.

24